

William M. Hogg (SBN 338196)
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
whogg@mybackwages.com

*Counsel for Lemons and the Hourly Employees*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **ARIC LEMONS**, Individually and for Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>**PEARCE SERVICES, LLC d/b/a PEARCE RENEWABLES**, a Delaware limited liability company,<br><br>       Defendant. | Case No. _____<br><br>**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>(1)  Failure to Pay Overtime Under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*);<br><br>(2)  Failure to Pay Overtime Under New York Law (N.Y. LAB. LAW § 190, *et seq.*).<br><br>(3)  Failure to Provide Timely Payment of Wages Under New York Law (N.Y. LAB. LAW § 191).<br><br>       **DEMAND FOR JURY TRIAL** |

1

**SUMMARY**

1.       Aric Lemons ("Lemons") brings this class and collective action to recover unpaid overtime wages, untimely paid wages, and other damages from Pearce Services, LLC d/b/a Pearce Renewables ("Pearce") under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

2.       Pearce employed Lemons as one of its Hourly Employees (defined below), including in New York, California, Oklahoma, Texas, Iowa, and Nebraska.

3.       Pearce pays its Hourly Employees, such as Lemons, on an hourly basis.

4.       Lemons and the other Hourly Employees regularly work more than 40 hours a workweek.

5.       But Pearce does not pay its Hourly Employees for all their hours worked.

6.       Instead, Pearce requires its Hourly Employees to "clock out" for 30 minutes a day to record they took a meal break, regardless of whether they actually received a *bona fide*, uninterrupted meal break (Pearce's "meal deduction policy").

7.       Thus, Pearce does not pay its Hourly Employees for that time.

8.       But Lemons and the other Hourly Employees do not actually receive *bona fide* meal breaks.

9.       Instead, Pearce requires Lemons and its other Hourly Employees to remain on-duty and perform their regular job duties throughout their shifts (including during their so-called "meal breaks"), and Pearce continuously subjects them to work interruptions during attempted "meal breaks."

10.       Pearce's meal deduction policy violates the FLSA and NYLL by depriving Pearce and the other Hourly Employees of overtime wages for all overtime hours worked.

11.       In addition to failing to pay its Hourly Employees for all their hours worked, Pearce also fails to pay them overtime at the required premium rate.

12.       Instead, Pearce pays Lemons and its other Hourly Employees per diems.

13.     Pearce knows these per diems should be, but are not, included in its Hourly Employees' "regular rates" of pay for overtime purposes (Pearce's "per diem pay scheme").

14.     Pearce's per diem pay scheme violates the FLSA by depriving Lemons and the other Hourly Employees of overtime at rates not less than 1.5 times their regular rates of pay – based on *all* remuneration received – for hours worked in excess of 40 a workweek.

15.     Additionally, Pearce employs numerous employees in New York State, a majority of whom are "manual workers" as contemplated by § 191 of the NYLL.

16.     For example, Pearce employed Lemons as a Tower Technician II in and around the Buffalo, New York area during approximately November and December 2022.

17.     Pearce employs numerous "manual laborers" in New York under job titles such as Tower Technician and other similar job titles.

18.     Despite being manual workers, Pearce fails to pay Lemons and its other New York Class Members (defined below) their wages within seven calendar days after the end of the week in which they earned such wages, as required by NYLL § 191.

19.     Instead, Pearce uniformly pays Lemons and its other Hourly Employees on a bi-weekly basis.

20.     In this regard, Pearce fails to timely pay earned wages to Lemons and its other New York Class Members.

21.     As manual laborers, Lemons and the other New York Class Members are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

22.     Accordingly, Pearce's failure to timely pay wages owed to Lemons and the other New York Class Members constitutes an "especially acute injury" under NYLL § 191. *See Caul v. Petco Animal Supplies, Inc.,* No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 [N.Y. 1st Dept. 2019]).

**JURISDICTION & VENUE**

23. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

24. This Court also has supplemental jurisdiction over the state-law subclass claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

25. This Court has general personal jurisdiction over Pearce because Pearce maintains its headquarters in Paso Robles, California.

26. Venue is proper in this District and Division because Pearce maintains its headquarters in Paso Robles, California, which is in this District and Division. 28 U.S.C. § 1391(b).

27. Lemons has not entered into an arbitration agreement with Pearce regarding any of the allegations in this complaint.

**PARTIES**

28. Lemons worked for Pearce as a Tower Technician II from approximately June 2022 through March 2023.

29. Throughout his employment, Pearce classified Lemons as nonexempt and paid him biweekly, on an hourly basis.

30. Throughout his employment, Pearce subjected Lemons to its illegal meal deduction policy, requiring him to "clock out" for 30 minutes a day for so-called "meal breaks," regardless of whether he actually received a *bona fide* meal break.

31. But Lemons did not actually receive *bona fide* meal breaks.

32. Further, throughout his employment, Pearce subjected Lemons to its illegal per diem pay scheme, paying him per diems that Pearce excluded from his regular rate for overtime purposes.

33. Lemons' written consent is attached as **Exhibit 1**.

34. Lemons brings this FLSA collective action on behalf of himself and other similarly situated hourly Pearce employees who were subject to Pearce's meal deduction policy and/or per diem pay scheme.

35.     Pearce requires these employees to "clock out" for 30 minutes a day for so-called "meal breaks."

36.     But these employees do not actually receive *bona fide* meal breaks.

37.     Pearce also pays these employees per diems.

38.     Pearce knows these per diems should be, but are not, included in these employees' regular rates of pay for overtime purposes.

39.     Thus, Pearce uniformly deprives these employees of overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* remuneration received – for hours worked in excess of 40 a workweek in violation of the FLSA.

40.     The FLSA Collective of similarly situated employees is defined as:

**All hourly Pearce Tower Technicians and similar jobs who were subject to Pearce's meal deduction policy and/or per diem pay scheme at any time in the past 3 years through the date of final judgment in this matter. (the "FLSA Collective Members").**

41.     Lemons also seeks to represent a class under the NYLL pursuant to FED. R. CIV. P. 23.

42.     Lemons worked for Pearce in New York as a "manual worker" within the meaning of NYLL § 191.

43.     But throughout his employment in New York, Pearce failed to timely pay Lemons his wages within seven calendar days after the end of the week in which he earned such wages.

44.     Lemons brings this class action on behalf of himself and other similarly situated Pearce Tower Technicians in New York whom Pearce failed to timely pay their overtime wages and/or lawfully earned wages.

45.     Pearce failed to pay these employees at the required rate – based on all remuneration received – for all their overtime hours worked.

46.     And Pearce failed to timely pay each of these manual workers their wages within seven calendar days after the end of the week in which they earned such wages.

47.     Instead, Pearce pays each of these manual workers on a bi-weekly basis in willful violation of the NYLL.

48.    The New York Class of similarly situated employees is defined as:

**All hourly Pearce Tower Technicians and similar jobs who worked in New York and who were (1) not paid on a weekly basis, (2) subject to Pearce's meal deduction policy, and/or (3) per diem pay scheme at any time during the past 6 years and 228 days[1] through final judgment in this matter (the "New York Class Members").**

49.    The FLSA Collective Members and the New York Class Members are collectively referred to as the "Hourly Employees."

50.    Pearce is a Delaware limited liability company with its principal place of business located in Paso Robles, California.

51.    Pearce can be served through its registered agent: **CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833**.

**FLSA COVERAGE**

52.    At all relevant times, Pearce was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

53.    At all relevant times, Pearce was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

54.    At all relevant times, Pearce was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as phones, computers, pens, paper, personal protective equipment, etc. – that have been moved in or produced for commerce.

55.    At all relevant times, Pearce has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

---

[1] This class period is due to Governor Cuomo's Executive Orders that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for a total of 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

56.   At all relevant times, the Hourly Employees were Pearce's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

57.   At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

58.   Pearce uniformly required its Hourly Employees to "clock out" and record they received a meal break, regardless of whether they actually received a bona fide meal break.

59.   As a result, Pearce failed to pay Lemons and its other Hourly Employees wages, including overtime wages, for the compensable work they performed during their unpaid "meal breaks."

60.   Pearce's uniform meal deduction policy therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

61.   Pearce also uniformly paid its Hourly Employees per diems that Pearce excluded from their regular rates of pay for overtime purposes.

62.   As a result, Pearce failed to pay Lemons and its other Hourly Employees at least 1.5 times their regular rates of pay – based on all remuneration received – for hours worked in excess of 40 a workweek.

63.   Pearce's per diem pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

### FACTS

64.   Pearce bills itself as "lead[ing] the renewable energy sector with [its] safety, consistency, and latest innovations" and "here for [their clients] anytime, anywhere . . . to ensure [their clients] are fully covered around the clock."[2]

65.   To meet its business objectives, Pearce hires workers, like Lemons and the other Hourly Employees, who climb, build, service, and maintain wind turbines and solar panels for Pearce's clients.

---

[2] https://www.pearce-renewables.com/ (last visited July 10, 2024).

ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Lemons v. Pearce Services, LLC d/b/a Pearce Renewables*

66.     Pearce uniformly classifies Lemons and its Hourly Employees as non-exempt and pays them biweekly, on an hourly basis.

67.     While exact job titles and precise job duties may differ, Lemons and the other Hourly Employees are all subject to Pearce's same or similar illegal policies – Pearce's meal deduction policy and per diem pay scheme – for similar work.

68.     For example, Pearce employed Lemons as a Tower Technician II in California, New York, Texas, Nebraska, and Iowa from approximately June 2022 until March 2023.

69.     As a Tower Technician II, Lemons' primary job duties included climbing wind turbines and performing repair and maintenance work, including on turbine electrical components and turbine blades in accordance with Pearce's uniform policies, procedures, and protocols.

70.     Lemons was Pearce's hourly employee.

71.     Specifically, Pearce paid Lemons approximately $28 to $29 an hour.

72.     Lemons reported his "on the clock" hours worked to Pearce through its uniform timeclock system.

73.     Pearce's records reflect the hours Lemons reported working each week "on the clock."

74.     Throughout his employment, Lemons typically worked approximately 10 hours a workday for 5 to 6 days a workweek (50 to 60 hours a week) "on the clock."

75.     But Pearce did not pay Lemons for all his hours worked.

76.     Instead, Pearce subjected Lemons to its uniform, illegal meal deduction policy and required him to work "off the clock" during his so-called "meal breaks."

77.     Specifically, Pearce required Lemons to "clock out" for 30 minutes a workday for so-called "meal breaks."

78.     But Pearce required Lemons to "clock out" for this time regardless of whether he actually received a *bona fide* meal break.

79.    If Lemons did not "clock out" to record he took a "meal break," Pearce would threaten to discipline him, discipline him, and/or manually deduct 30 minutes from his recorded work time that workday.

80.    But Lemons did not actually receive *bona fide* meal breaks.

81.    Instead, Lemons was forced to perform his regular job duties throughout his workday, including during his so-called "meal breaks."

82.    And Pearce continuously subjected Lemons to work interruptions during his attempted meal (and rest) breaks.

83.    Thus, Pearce failed to provide Lemons with *bona fide*, duty-free meal periods.

84.    And Pearce did not pay Lemons for his so-called "meal breaks."

85.    As a result, Pearce failed to pay Lemons overtime wages for all hours worked over 40 in a workweek (including those worked "off the clock" during his on-duty "meal breaks") in violation of the FLSA and NYLL.

86.    Additionally, throughout his employment, Pearce paid Lemons according to its uniform, illegal per diem pay scheme.

87.    Specifically, Pearce paid Lemons per diems of approximately $150 a day, regardless of location, that it knew should have been, but were not, included in Lemons' regular rate of pay for overtime purposes.

88.    As a result, Pearce failed to pay Lemons overtime at a rate not less than 1.5 times his regular rate of pay – based on *all* remuneration received – for his hours worked in excess of 40 a workweek in violation of the FLSA and NYLL.

89.    Lemons and the other Hourly Employees perform their jobs under Pearce's supervision and use materials, equipment, tools, and technology Pearce approves and supplies.

90.    Pearce requires Lemons and its other Hourly Employees to abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

91.     Each bi-weekly pay period, Pearce pays Lemons and the other Hourly Employees based on common systems and methods Pearce selects and controls.

92.     Like Lemons, the other Hourly Employees are Pearce's hourly employees.

93.     Pearce requires its Hourly Employees to record their "on the clock" hours worked using Pearce's uniform timeclock system.

94.     Thus, Pearce has records of the number of hours its Hourly Employees worked "on the clock" each week.

95.     Like Pearce, the other Hourly Employees typically work approximately 10 hours a day and 5 to 6 days a week (50 to 60 hours a workweek) "on the clock."

96.     But just as with Lemons, Pearce fails to pay its other Hourly Employees for all their hours worked.

97.     Instead, Pearce subjects all its Hourly Employees to the same illegal meal deduction policy it imposed on Lemons and requires them to work "off the clock," without pay.

98.     Specifically, Pearce requires all its Hourly Employees to "clock out" for 30 minutes a workday to record they took a "meal break."

99.     But Pearce requires all its Hourly Employees to "clock out" for this time regardless of whether they actually receive a *bona fide* meal break.

100.    If the Hourly Employees do not "clock out" and record they took a "meal break," Pearce threatens to discipline them, disciplines them, and/or manually deducts 30 minutes from their recorded work time that workday.

101.    Pearce simply assumes its Hourly Employees receive *bona fide* meal breaks each workday.

102.    But, like Lemons, the other Hourly Employees do not actually receive *bona fide* meal breaks.

103.    Instead, Pearce requires all its Hourly Employees to remain on-duty throughout their shifts, including during their unpaid "meal breaks."

104.    And, like Lemons, Pearce continuously subjects its other Hourly Employees to work interruptions during their unpaid "meal breaks."

105.    Because of these constant work interruptions, the Hourly Employees are not free to engage in personal activities during their unpaid "meal breaks."

106.    In other words, the Hourly Employees are not relieved of their work duties during their unpaid "meal breaks."

107.    Rather, during their unpaid "meal breaks," the Hourly Employees are forced to remain on-duty and perform their regular job duties and responsibilities "off the clock."

108.    Thus, the Hourly Employees (like Lemons) routinely spend their unpaid "meal breaks" performing work "off the clock" for Pearce's – not their own – predominant benefit.

109.    This unpaid "off the clock" work time is compensable under the FLSA and NYLL because Pearce knew, or should have known: (1) Lemons and its other Hourly Employees were performing unpaid work during their "meal breaks"; (2) they were interrupted or subject to interruptions with work duties during any attempted meal break; (3) they were not completely relieved of all duties during their unpaid meal breaks; (4) they entirely skipped their meal breaks due to work demands; (5) their unpaid meal breaks were less than 30 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid meal breaks because of constant work interruptions; (7) they remained on Pearce's premises and/or under Pearce's supervision during their unpaid meal breaks; and/or (8) they spent their unpaid meal breaks performing their regular job duties for Pearce's predominant benefit.

110.    Pearce fails to exercise its duty to ensure its Hourly Employees are not performing work "off the clock" during their unpaid "meal breaks."

111.    And Pearce knows, should know, or recklessly disregards whether its Hourly Employees routinely perform work "off the clock" during their unpaid "meal breaks."

112.    Indeed, Lemons and other Hourly Employees complained to their supervisors, HR, and/or Pearce management about being forced to work "off the clock" during their unpaid "meal breaks."

113.    Thus, Pearce requested, suffered, permitted, or allowed its Hourly Employees (like Lemons) to work "off the clock" during their unpaid "meal breaks."

114.    Despite accepting the benefits, Pearce does not pay its Hourly Employees (like Lemons) for the compensable work they perform "off the clock" during their so-called "meal breaks."

115.    Thus, under its uniform, illegal meal break policy, Pearce fails to pay Lemons and its other Hourly Employees overtime for all hours worked in excess of 40 a workweek (including those worked "off the clock" during their on-duty "meal breaks") in violation of the FLSA and NYLL.

116.    Additionally, Pearce subjects its other Hourly Employees to the same per diem pay scheme it imposed on Lemons.

117.    Specifically, Pearce pays its other Hourly Employees flat per diems, regardless of location.

118.    Pearce knows these per diems should be, but are not, included in its Hourly Employees' regular rates of pay for overtime purposes.

119.    As a result, Pearce fails to pay Lemons and its other Hourly Employees overtime at a rate not less than 1.5 times their regular rates of pay – based on *all* remuneration received – for hours worked in excess of 40 a workweek in violation of the FLSA and NYLL.

120.    And, throughout his employment, including while he worked in New York during approximately November and December 2022, over 25% of Lemon's duties were physical tasks, including but not limited to: walking, donning and doffing personal protective and climbing equipment, climbing wind turbines carrying tools and equipment, repairing wind turbines, including removing and replacing electrical components and repairing and maintaining turbine blades, and standing or otherwise being "on his feet" for extended periods of time.

121.    Despite regularly spending more than 25% of his workday performing these physical

tasks, Pearce failed to timely pay Lemons his earned wages.

122.    Instead, Pearce paid Lemons on a bi-weekly basis throughout his employment, including throughout his employment in New York:

**I.    Payroll**
You will be compensated at a rate of $28.00/hr. Scheduled hours may vary per week. Pearce pays bi-weekly.

123.    As a result of Pearce's untimely, bi-weekly wage payments, Pearce has underpaid Lemons for the first seven days of each bi-weekly pay period throughout his employment in New York during approximately November and December 2022.

124.    Thus, Pearce paid Lemons on an untimely basis in willful violation of the NYLL.

125.    In this regard, Pearce has failed to timely pay Lemons his wages earned not later than seven days after he earned such wages as required by NYLL § 191(1)(a) for every other week during approximately November 2022 through December 2022.

126.    As a result of Pearce's untimely wage payments, Pearce underpaid Lemons every other week across this entire period.

127.    Moreover, Pearce's underpayments denied Lemons the time-value of his earned wages. *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, --- F. Supp. 3d. ---, 2023 WL 4457911, at *7 (W.D.N.Y. July 11, 2023) (holding an employee's "lost time value of his wages" from being paid late was an injury in fact).

128.    For example, Lemons was unable to invest, save, or purchase utilizing the wages he earned during the first seven days of each bi-weekly pay period throughout his employment.

129.    Pearce uniformly subjects its other New York Class Members to the same illegal policies it imposed on Lemons.

130.    Indeed, the other New York Class Members perform the same or similar physical job duties as Lemons.

131.    Like Lemons, over 25% of the other Hourly Manual Workers' duties are physical tasks, including but not limited to: walking, donning and doffing personal protective and climbing

1  equipment, climbing wind turbines carrying tools and equipment, repairing wind turbines, including

2  removing and replacing electrical components and repairing turbine blades, and standing or otherwise

3  being "on their feet" for extended periods of time.

4      132.    But like Lemons, despite regularly spending more than 25% of their shifts performing

5  these physical tasks, Pearce fails to timely pay its other New York Class Members their earned wages.

6      133.    Instead, like Lemons, Pearce uniformly pays its other New York Class Members on a

7  bi-weekly basis.

8      134.    As a result of its untimely wage payments, Pearce uniformly underpays its New York

9  Class Members for the first seven days of each bi-weekly pay period.

10     135.    Thus, like Lemons, Pearce also uniformly pays its New York Class Members on an

11  untimely basis in willful violation of the NYLL.

12     136.    And, like Lemons, Pearce's underpayments similarly deny the other New York Class

13  Members the time-value of their money, as they are unable to invest, save, or purchase utilizing the

14  wages they earned and are owed during each underpaid workweek.

15     137.    Accordingly, because Pearce uniformly underpays Lemons and its other New York

16  Class Members for every other workweek that it pays their lawfully earned wages after more than

17  seven days of the time they complete their work, Pearce violated the NYLL.

18                    **CLASS AND COLLECTIVE ACTION ALLEGATIONS**

19     138.    Lemons incorporates all other paragraphs by reference.

20     139.    Like Lemons, the other Hourly Employees are uniformly victimized by Pearce's illegal

21  (1) meal deduction policy, (2) per diem pay scheme, and/or (3) untimely payment of wages in New

22  York.

23     140.    Other Hourly Employees worked with Lemons and indicated they were paid in the

24  same manner, performed similar physical work, and were subject to Pearce's same illegal meal

25  deduction policy, per diem pay scheme, and/or untimely payment of wages.

26

27

28

141. Based on his experience with Pearce, Lemons is aware Pearce's illegal meal deduction policy, per diem pay scheme, and/or untimely payment of wages were imposed on the other Hourly Employees

142. Lemons and the other New York Class Members have all been injured in that they have been compensated in an untimely manner due to Pearce's common policies, practices, and patterns of conduct.

143. Likewise, Lemons and the other Hourly Employees have all been injured in that they have not been compensated for all their overtime hours worked due to Pearce's common policies, practices, and patterns of conduct.

144. Indeed, Pearce's corporate-wide policies and practices affected Lemons and the other Hourly Employees similarly.

145. And Pearce benefited from the same type of unfair and/or wrongful acts as to each Hourly Employee.

146. The putative classes of Hourly Employees are so numerous that joinder of all class members in one lawsuit is impractical.

147. The Hourly Employees are similarly situated in the most relevant respects.

148. Even if their precise job titles, exact duties, and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to their lawfully earned wages and overtime wages for all hours worked in excess of 40 a week.

149. Rather, the putative classes of Hourly Employees are held together by Pearce's meal deduction policy, per diem pay scheme, and/or untimely payment of wages, which systematically deprive Lemons and the other Hourly Employees of their lawfully earned wages, including overtime wages in a timely manner.

150. Pearce's records reflect the wages each Hourly Employees earned each workweek.

151. Pearce's records also reflect it failed to pay its Hourly Employees their lawfully earned wages within seven days of the time they completed their work.

152.    The untimely wages owed to Lemons and the other New York Class Members can therefore be calculated using the same formula applied to the same records.

153.    Further, Pearce's records reflect the number of hours the Hourly Employees recorded they worked "on the clock" each workweek.

154.    Pearce's records also show the number of hours the Hourly Employees worked "on the clock" each workweek.

155.    And Pearce's records further show it required the Hourly Employees to "clock out" for 30 minutes a day for so-called "meal breaks."

156.    The back wages owed to Lemons and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

157.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Pearce's records, and there is no detraction from the common nucleus of liability facts.

158.    Therefore, the issue of damages does not preclude class or collective treatment.

159.    And Lemon's experiences are therefore typical of the experiences of the other Hourly Employees.

160.    Lemons has no interest contrary to, or in conflict with, the interests of other Hourly Employees that would prevent class or collective treatment.

161.    Like each Hourly Employee, Lemons has an interest in obtaining the untimely wages and overtime wages owed to them under federal and New York law.

162.    Lemons and his counsel will fairly and adequately represent the Hourly Employees and their interests.

163.    Indeed, Lemons retained counsel with significant experience in handling complex class and collective action litigation.

164.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Lemons v. Pearce Services, LLC d/b/a Pearce Renewables*

165.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Pearce will reap the unjust benefits of violating the FLSA and New York labor laws.

166.    Further, even if some of the Hourly Employees could afford individual litigation against Pearce, it would be unduly burdensome to the judicial system.

167.    Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and Pearce.

168.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

169.    The questions of law and fact that are common to each Hourly Employees predominate over any questions affecting solely the individual members.

170.    The common questions of law and fact include:

a.    Whether Pearce paid its New York Class Members their earned wages on a non-weekly basis;

b.    Whether Pearce paid its New York Class Members their lawfully earned wages on an untimely basis in violation of the NYLL;

c.    Whether Pearce engaged in a policy and practice of requiring its Hourly Employees to clock out for 30 minutes a day for "meal breaks," regardless of whether they actually received a *bona fide*, uninterrupted meal break;

d.    Whether Pearce knew, or had reason to know, the Hourly Employees were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid "meal breaks";

e.    Whether Pearce failed to pay its Hourly Employees overtime wages for all overtime hours worked, including those worked "off the clock," in violation of the FLSA and NYLL;

f.      Whether Pearce's decision not to pay the New York Class Members
their earned wages on a weekly basis was made in good faith;

g.      Whether Pearce's decision not to pay the Hourly Employees overtime
wages for all overtime hours worked, including those worked "off the
clock," was made in good faith; and

h.      Whether Pearce's violations were willful.

171.    Lemons knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

172.    As part of its regular business practices, Pearce intentionally, willfully, and repeatedly violated the FLSA and NYLL with respect to Lemons and the other Hourly Employees.

173.    Pearce's illegal meal deduction policy, per diem pay scheme, and/or untimely payment of wages uniformly deprive Lemons and the other Hourly Employees of the lawfully earned wages and overtime wages they are owed under the FLSA and/or New York law.

174.    There are many similarly situated Hourly Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

175.    The Hourly Employees are known to Pearce and can be readily identified through Pearce's business and personnel records.

**PEARCE'S VIOLATIONS WERE WILLFUL AND DONE IN
RECKLESS DISREGARD OF THE FLSA AND NYLL**

176.    Lemons incorporates all other paragraphs by reference.

177.    Pearce knew it was subject to the NYLL and its supporting regulations, including the timely payment of wages provisions.

178.    Pearce knew the NYLL required it to pay manual workers their lawfully earned wages weekly and not later than seven calendar days after the end of the week in which such wages are earned.

179.     Pearce knew Lemons and its other New York Class Members regularly spent more than 25% of their shift performing physical tasks.

180.     In other words, Pearce knew, should have known, or recklessly disregarded whether Lemons and the other New York Class Members were "manual workers" under the NYLL.

181.     Nonetheless, Pearce did not pay Lemons and its other New York Class Members their lawfully earned wages within seven calendar days after the end of the week in which they earned such wages.

182.     Instead, Pearce paid Lemons and its other New York Class Members on a bi-weekly basis.

183.     In other words, Pearce knew, should have known, or recklessly disregarded whether it failed to timely pay Lemons and the other New York Class Members their lawfully earned wages in violation of the NYLL.

184.     Pearce's failure to timely pay Lemons and its other New York Class Members their lawfully earned wages was neither reasonable, nor was Pearce's decision to pay these manual workers on a bi-weekly basis made in good faith.

185.     Pearce knew it was subject to the FLSA's and NYLL's respective overtime provisions.

186.     Pearce knew the FLSA and NYLL required it to pay non-exempt employees, including Lemons and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

187.     Pearce knew Lemons and the other Hourly Employees were non-exempt employees entitled to overtime pay.

188.     Pearce knew it paid Lemons and the other Hourly Employees on an hourly basis.

189.     Pearce knew Lemons and each Hourly Employees worked over 40 hours in at least one workweek during relevant period(s) because Pearce required them to record their "on the clock" hours worked using its timeclock system.

190.    Pearce knew the FLSA and NYLL required it to pay employees, including Lemons and the other Hourly Employees, for all hours they performed compensable work.

191.    Pearce knew that, as Lemon's and the other Hourly Employee's employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that Pearce did not want performed.

192.    Pearce knew it required Lemons and the other Hourly Employees to clock out for 30 minutes a day for so-called "meal breaks."

193.    Pearce knew Lemons and the other Hourly Employees did not actually receive *bona fide* meal breaks.

194.    Pearce knew Lemons and the other Hourly Employees regularly spent their "meal breaks" performing their regular work duties "off the clock" for Pearce's predominant benefit.

195.    Thus, Pearce knew it requested, suffered, permitted, or allowed Lemons and the other Hourly Employees to work "off the clock" during their unpaid "meal breaks."

196.    In other words, Pearce knew, should have known, or recklessly disregarded whether Lemons and the other Hourly Employees performed compensable work "off the clock" during their "meal breaks."

197.    Nonetheless, Pearce did not pay Lemons and the other Hourly Employees for the work they performed "off the clock" during their "meal breaks."

198.    Thus, Pearce knew, should have known, or recklessly disregarded whether it failed to pay Lemons and the other Hourly Employees for all the hours they performed compensable work.

199.    Pearce's decision to require Lemons and the other Hourly Employees to clock out for 30 minutes a day to record "meal breaks," regardless of whether they actually received *bona fide* meal breaks, was neither reasonable, nor was it made in good faith.

200.    Pearce's failure to pay Lemons and the other Hourly Employees overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

201.    Pearce knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA and NYLL.

202.    Pearce knowingly, willfully, and/or in recklessly disregard carried out its illegal policies that systematically deprived Lemons and the other Hourly Employees of their lawfully earned wages and overtime wages in violation of the FLSA and NYLL.

203.    In sum, Pearce's FLSA and NYLL violations were willful, carried out in bad faith, and caused significant damage to Lemons and the other Hourly Employees.

**PEARCE'S VIOLATIONS WERE NOT DONE IN GOOD FAITH**

204.    Pearce incorporates all other paragraphs by reference.

205.    Pearce did not investigate whether it was required to include its Hourly Employees' per diems in their regular rates of pay for overtime purposes.

206.    Pearce did not seek the advice of counsel regarding excluding its Hourly Employees' per diems from their regular rates of pay for overtime purposes.

207.    Pearce did not receive advice from counsel regarding excluding its Hourly Employees' per diems from their regular rates of pay for overtime purposes.

208.    Pearce did not rely on the advice of counsel in deciding to exclude its Hourly Employees' per diems from their regular rates of pay for overtime purposes.

209.    Pearce's decision to exclude its Hourly Employees' per diems from their regular rates of pay for overtime purposes was neither reasonable nor made in good faith.

210.    Pearce's decision not to pay its Hourly Employees overtime wages at the proper premium rate was neither reasonable nor made in good faith.

211.    Pearce did not seek the advice of counsel regarding its meal deduction policy.

212.    Pearce did not receive advice from counsel regarding its meal deduction policy.

213.    Pearce did not rely on the advice of counsel in imposing its meal break policy on its Hourly Employees.

214.    Pearce knew it failed to provide its Hourly Employees with *bona fide*, duty-free meal breaks.

215.    Pearce knew its Hourly Employees did not actually receive *bona fide*, duty-free meal breaks.

216.    Pearce's decision not to provide its Hourly Employees with *bona fide* meal breaks was neither reasonable nor made in good faith.

217.    Pearce's decision to require its Hourly Employees to "clock out" for 30 minutes a day to record they took a "meal break" regardless of whether they actually received *a bona fide* meal break was neither reasonable nor made in good faith.

218.    Pearce's decision not to pay its Hourly Employees overtime wages for all overtime hours worked was neither reasonable nor made in good faith.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE MEMBERS)

219.    Lemons incorporates all other paragraphs by reference.

220.    Lemons brings his FLSA claims on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

221.    Pearce violated, and is violating, the FLSA by employing non-exempt employees (Lemons and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 each workweek, including hours worked "off the clock" during their "meal breaks."

222.    Pearce's unlawful conduct harmed Lemons and the other FLSA Collective Members by depriving them of the overtime compensation they are owed.

223.    Accordingly, Pearce owes Lemons and the other FLSA Collective Members the difference between the overtime wages actually paid and the proper overtime wages actually earned.

224.    Because Pearce's FLSA violations were willful, Pearce owes these wages for at least the past 3 years.

225.    Because Pearce's FLSA violations were not committed in good faith, Pearce is also liable to Lemons and the other FLSA Collective Members for an additional amount equal to all unpaid wages as liquidated damages.

226.    Finally, Lemons and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL
### (NEW YORK CLASS)

227.    Lemons incorporates all other paragraphs by reference.

228.    Lemons brings his NYLL overtime claims as a class action on behalf of himself and the other New York Class Members pursuant to FED. R. CIV. P. 23.

229.    Pearce's conduct violates the NYLL (NYLL §§ 190, *et seq.* and 650, *et seq.*) and its implementing regulations (12 NYCRR §§ 142, *et seq.*).

230.    At all relevant times, Pearce was subject to the NYLL because Pearce was (and is) a covered "employer" within the meaning of the NYLL. *See* NYLL §§ 190(3) and 651(6).

231.    At all relevant times, Pearce employed Lemons and each New York Class Member as its covered "employees" within the meaning of the NYLL. *See* NYLL §§ 190(2) and 651(5).

232.    The NYLL and its implementing regulations requires employers, like Pearce, to pay non-exempt employees, including Lemons and the other New York Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. *See* 12 NYCRR Part 142-3.2; *see also* NYLL §§ 190, *et seq.* and 650, *et seq.*

233.    Lemons and the other New York Class Members are entitled to overtime pay under the NYLL and its implementing regulations.

234.    Lemon's and the other New York Class Members' unpaid overtime wages are recoverable "wages" within the meaning of the NYLL. *See* NYLL § 190(1).

235.    Pearce violated, and is violating, the NYLL and its implementing regulations by employing non-exempt employees (Lemons and the other New York Class Members) for workweeks in excess of 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 each workweek, including those hours worked "off the clock." *See* 12 NYCRR Part 142-3.2; *see also* NYLL §§ 190, *et seq.* and 650, *et seq.*

236.    Pearce's unlawful conduct harmed Lemons and the other New York Class Members by depriving them of the overtime wages they are owed.

237.    In violating the NYLL, Pearce acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

238.    Accordingly, Pearce owes Lemons and the other New York Class Members the difference between the overtime wages actually paid and the proper overtime wages actually earned, plus liquidated damages in an amount equal to their unpaid wages, as well as interest on those amounts. *See* NYLL §§ 198(1-a) and 663(1).

239.    Finally, Lemons and the other New York Class Members are also entitled to record their reasonable attorneys' fees and costs incurred in this action. *See* NYLL §§ 198(4) and 663(1).

### COUNT III

### FAILURE TO PAY TIMELY WAGES UNDER THE NYLL
### (NEW YORK CLASS)

240.    Lemons incorporates all other paragraphs by reference.

241.    Lemons brings his NYLL claims as a class action on behalf of himself and the other similarly situated New York Hourly Class Members pursuant to FED. R. CIV. P. 23.

242.    Section 191 of the NYLL requires employers, like Pearce, to pay manual workers, including Lemons and the other New York Class Members, their lawfully earned wages weekly and not later than seven calendar days after the end of the week in which such wages are earned. *See* NYLL § 191(1)(a).

243.    NYLL § 191's timely payment of wages provisions and its supporting regulations apply to Pearce and protect Lemons and the other New York Class Members.

244.    Pearce violated, and is violating, the NYLL by failing to pay Lemons and the other New York Class Members on a timely basis. *See* NYLL § 191(1)(a).

245.    Pearce's unlawful conduct harmed Lemons and the other New York Class Members by depriving them of the earned wages they are owed.

246.    In violating the NYLL, Pearce acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

247.    Thus, Pearce's NYLL violations with respect to Lemons and the other New York Class Members were "willful" within the meaning of NYLL § 198.

248.    In *Caul v. Petco Animal Supplies, Inc*, Judge Kovner of the Eastern District of New York held the NYLL's liquidated damages provisions are "designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." No. 20-CV-3534 (RPK)(SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied*, No. 20-CV-3534 (RPK)(SJB), 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).

249.    Accordingly, Lemons and the other New York Class Members are entitled to recover the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## RELIEF SOUGHT

WHEREFORE, Lemons, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

    b.    An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Lemons and his counsel to represent the interests of the Hourly Employees;

d.    An Order finding Pearce liable to Lemons and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order finding Pearce liable to Lemons and the other New York Class Members their unpaid overtime wages owed under the NYLL, plus liquidated damages in an amount equal to their unpaid wages;

f.    An Order finding Pearce liable to Lemons and the other New York Class Members for liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

g.    Judgement awarding Lemons and the other Hourly Employees all unpaid/untimely wages, unpaid overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and NYLL;

h.    An Order awarding attorneys' fees, costs, and expenses incurred in this action;

i.    Pre- and post-judgment interest at the highest applicable rates; and

j.    Such other and further relief as may be necessary and appropriate.

Date: July 17, 2024                                    Respectfully submitted,

                                                    JOSEPHSON DUNLAP LLP

                                                    /s/ William M. Hogg
                                                    William M. Hogg (SBN 338196)

                                                    *Counsel for Lemons and the Hourly Employees*

**DEMAND FOR JURY TRIAL**

Lemons hereby demands a jury trial on all claims and issues to which he and the other Hourly Employees are entitled to a jury.

Date: July 17, 2024                                  Respectfully submitted,

                                                    **JOSEPHSON DUNLAP LLP**

                                                    */s/ William M. Hogg*
                                                    William M. Hogg (SBN 338196)

                                                    *Counsel for Lemons and the Hourly Employees*